IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY TRUJILLO,

      Plaintiff,

vs.

KATHERINE WRIGHT,

      Defendant.

No.  1:13-cv-00620-PJK-GBW

MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT

THIS MATTER comes on for consideration of Defendant's Motion for Summary Judgment filed November 17, 2014.  Doc. 57.  Upon consideration thereof, the court finds that the motion is well taken and should be granted.


Background

In this civil rights action pursuant to 42 U.S.C. § 1983, Plaintiff Jerry Trujillo contends that Defendant Albuquerque Police Department Officer Katherine Wright violated his Fourth Amendment rights by arresting him without probable cause and seizing him with excessive force.  Doc. 5 (Second Amended Complaint; Counts I and II) at 5–6.  He contends that the force was unreasonable because Officer Wright created the need to use force and it resulted in permanent injury.  Mr. Trujillo also claimed that he

was arrested in retaliation for protected speech in violation of his First Amendment rights. Id. (Count III) at 6–7.  He now concedes that there was no violation of those rights.  Doc. 60 at 1.

The following facts are uncontroverted.  On the afternoon of November 21, 2012, Officer Wright arrived, by herself, at an accident scene near Wyoming Blvd. NE and Cubero St. NE in Albuquerque.  She approached one of the vehicles involved in the accident, which belonged to Kaira Robinson.  On approach, Officer Wright encountered Mr. Trujillo and another man, Preston Lauer.  Mr. Trujillo stated to the officer that he saw what happened.  The officer then ordered Mr. Trujillo and Mr. Lauer to clear the scene or sit by a nearby wall.  Mr. Lauer did so.  Mr. Trujillo asked the officer to lower her voice:

> Q.  So when she told you to clear the area, what specifically do you recall saying to her?
>
> A.  I said, "If you lower your voice I will gladly cooperate with what you are telling me to do."

Doc. 57-1 at 21 (Trujillo dep.); Doc. 57-2 ¶ 3 (Trujillo stmt.).  According to Mr. Trujillo, the officer did not lower her voice and "basically pushed me out of the way and proceeded to turn around to handcuff me."  Doc. 57-1 at 21–22.  Mr. Trujillo's narrative captures it this way:

> She [Officer Wright] told me to sit on the sidewalk and I was too shaken and worried about the victim I was helping, to comply.  I stated to Officer Wright that I would stand and she grabbed by my arm [sic] and attempted to handcuff me for failing to sit on the ground.  She wrestled me to the ground and humiliated me forcing my head to the sidewalk. . . .  While trying to cuff me she grabbed my index finger and forced it back so hard that it almost broke. . . .  I told her she was not going to cuff me for being a Good

> Samaritan.  She then said without cuffing me to just sit on the ground next to the wall . . . .

Doc. 57-2 ¶ 4; Doc. 57 ¶¶ 18–20.  It is uncontroverted that Mr. Trujillo resisted Officer Wright's efforts to handcuff him by extending an arm, whereupon she pulled his index finger to bring his arm back so that he might be handcuffed.  Doc. 57-1 at 24–25; Doc. 57 ¶ 18.

Discussion

Summary judgment is appropriate if the movant shows with materials in the record "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), 56(c)(1)(A); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A court views the evidence and its inferences in the light most favorable to the non-movant.  Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014).  However, disputes about immaterial facts will not preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When a defendant raises qualified immunity as a defense, a plaintiff must properly allege a deprivation of a constitutional right and must further show that the law supporting that right was clearly established at the time of the deprivation.  Tolan, 134 S. Ct. at 1865–66; Kaufman v. Higgs, 697 F.3d 1297, 1300 (10th Cir. 2012).

A.      Procedural Issues

In this case, several procedural issues deserve mention before proceeding to the

merits.  First, Mr. Trujillo obtained an extension to file his response on December 15,

2014.  Doc. 59.  Though filed on December 15, his response did not contain the

referenced exhibits.  Doc. 60.  The exhibits were filed on December 16, Doc. 61; this

does not appear to be an oversight as the jurat on Mr. Trujillo's affidavit is dated

December 16, Doc. 61-1.

Be that as it may, Mr. Trujillo's response does not comply with the local rules in

that the exhibits fail to highlight the pertinent portions.  D.N.M. LR-Civ. 10.6.  This is the

paradigmatic case for application of Rule 10.6, since Mr. Trujillo has placed whole

depositions in the record, Doc. 61-2 (Kaira Robinson), 61-3 (Katherine Wright), 61-4

(Nishant Sreedharan), 61-5 (Jerry Trujillo), 61-6 (Preston Lauer), and he did not obtain

permission to place more than 50 pages of exhibits in the record as required by Rule 10.5.

See Doc. 63 at 6 n.2 (Defendant's Response).  Although Mr. Trujillo does cite certain

pages of those exhibits in his counter-statement of facts, neither the court nor the movant

should be required to highlight the designated portions for him.

To the extent that Mr. Trujillo disputes Officer Wright's statement of facts, Doc.

57 at 2–4, he has not complied with Fed. R. Civ. P. 56 or local rule 56.1.  Fed. R. Civ. P.

56(c)(1)(A); D.N.M. LR-Civ. 56.1(b).  It is not enough for the non-movant to declare that

a fact is disputed.  Rather, the non-movant must cite materials in the record to controvert

the fact put forward by the movant.  Id.[1]  Mr. Trujillo was required to meet Officer

Wright's facts head-on, and then set forth an additional set of facts if desired.  Although

Mr. Trujillo did provide citations to the record concerning his counter-statement of facts,

that is insufficient, particularly where he did not reference Officer Wright's statement of

facts.

       In his response materials, Mr. Trujillo has provided an affidavit which attempts to

retreat from his prior deposition testimony, which indicates that he understood Officer

Wright's commands—even if he did not agree with them—and that he actively resisted

her.  Doc. 57-1 at 20–24; Doc. 57-2 ¶¶ 3–4.  He now claims that he asked Officer Wright

to lower her voice because the volume interfered with his understanding of her commands

and that his past descriptions of his thoughts and reactions "were merely my immediate

surprise reactions, not a decision to resist arrest."  Doc. 61-1 ¶¶ 4, 6 (Trujillo aff.).

---

[1]  The local rule provides:

> The Response must contain a concise statement of the material facts cited
> by the movant as to which the non-movant contends a genuine issue does
> exist.  Each fact in dispute must be numbered, must refer with particularity
> to those portions of the record upon which the non-movant relies, and must
> state the number of the movant's fact that is disputed.  All material facts set
> forth in the Memorandum will be deemed undisputed unless specifically
> controverted.  The Response may set forth additional facts other than those
> which respond to the Memorandum which the non-movant contends are
> material to the resolution of the motion.  Each additional fact must be
> lettered and must refer with particularity to those portions of the record
> upon which the non-movant relies.

D.N.M. LR-Civ. 56.1(b).

An affidavit contrary to an affiant's prior sworn statements should be disregarded when it constitutes "an attempt to create a sham fact issue."  Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986).  This is because "the utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony."  Id.  Factors to consider in determining the existence of a sham fact issue include whether the affiant was cross-examined during his earlier testimony, whether he had access to the pertinent evidence at the time of his earlier testimony, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.  Id.  Mr. Trujillo was cross-examined during his deposition, had access to all relevant evidence at that time, and has not argued that he was confused at the time of his deposition.  Thus, the affidavit included in his response materials is a sham to the extent it repudiates his earlier testimony and should be disregarded as to that apparent contradiction.

B.     Qualified Immunity

Beyond these procedural concerns, the operative facts taken in the light most favorable to Mr. Trujillo require a finding of qualified immunity.  "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The framework for analyzing claims of qualified

immunity on summary judgment is well-established.  Once a defendant pleads qualified

immunity, the plaintiff must: (1) come forward with sufficient facts to show that the

defendant's actions violated a federal constitutional or statutory right, and (2) demonstrate

that the right violated was clearly established at the time of the defendant's conduct.  See

Pearson v. Callahan, 555 U.S. 223, 232 (2009); Baptiste v. J.C. Penney Co., 147 F.3d

1252, 1255 (10th Cir. 1998).  The plaintiff's articulation of his clearly established

constitutional right and the defendant's conduct which violated that right must be

specific.  Baptiste, 147 F.3d at 1255 (citing Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir.

1995)).

1.     False Arrest

        Mr. Trujillo first contends that Officer Wright violated his constitutional rights by

falsely arresting him without probable cause.  Assuming without deciding the encounter

could be characterized as an arrest, Officer Wright had probable cause to arrest Mr.

Trujillo.  Probable cause exists "where facts and circumstances within an officer's

knowledge and of which he had reasonably trustworthy information are sufficient to

warrant a prudent man in believing that an offense has been or is being committed."

Marshall v. Columbia Lea Reg'l Hosp., 345 F.3d 1157, 1166 (10th Cir. 2003).  Under

New Mexico law and the Albuquerque Code of Ordinances, it is a criminal offense to

interfere with law enforcement by resisting, evading, or obstructing an officer engaged in

the lawful discharge of her duties.  N.M. Stat. § 30-22-1[2]; Albuquerque, N.M., Code § 12-2-19.[3]

It is uncontroverted that, upon her arrival at the accident scene, Officer Wright ordered Mr. Trujillo to "clear the area."  Doc. 5 at 3, ¶ 10; Doc. 57-1 at 20.  Mr. Trujillo did not obey; instead, he argued with Officer Wright, stating that he would cooperate only if she lowered her voice.  Doc. 57-1 at 21; Doc. 57-2 ¶ 3.  After Mr. Trujillo refused to step away from the accident victim as ordered, Officer Wright attempted to detain Mr. Trujillo.  Doc. 57-1 at 21–22; Doc. 57-2 at ¶ 4.

Mr. Trujillo argues that Officer Wright was not engaged in the "lawful" discharge of her duties because she was acting contrary to the Albuquerque Police Department Standard Operating Procedures (SOPs), which state, among other things, that officers "shall maintain a neutral and detached attitude" and "shall obtain information in an official and courteous manner."  Doc. 60 at 6, 9–10.  The parties dispute whether Officer

[2] N.M. Stat. § 30-22-1(D) states in relevant part:

> Resisting, evading or obstructing an officer consists of . . . resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties.  Whoever commits resisting, evading or obstructing an officer is guilty of a misdemeanor.

[3] Albuquerque, N.M. Code § 12-2-19 states in relevant part:

> Resisting, obstructing or refusing to obey an officer consists of either . . .
> (B)  Resisting or abusing any judge, magistrate or peace officer in the lawful discharge of his duties; or
> (C)  Refusing to obey or comply with any lawful process or order given by any police officer acting in the lawful discharge of his duties; or
> (D)  Interfering with, obstructing or opposing any officer in the lawful discharge of his regular and affixed duties.

Wright's attitude was sufficiently courteous under the circumstances, but this dispute is not relevant to her claim of qualified immunity.  A lack of courtesy, even when courtesy is generally expected by the Albuquerque Police Department's guidelines, does not make an encounter constitutionally unlawful.  Mr. Trujillo's Fourth Amendment claims are governed by an objective federal standard, not by the SOPs.  See Tanberg v. Sholtis, 401 F.3d 1151, 1162–63 (10th Cir. 2005).  Moreover, a lack of civility by a police officer is not a sufficient basis for the denial of qualified immunity given probable cause to arrest.  Humphrey v. Staszak, 148 F.3d 719, 727–28 (7th Cir. 1998).

Mr. Trujillo further argues that a person must be "rude, insolent, or angry" in order to violate N. M. Stat. § 30-22-1, and whether he behaved rudely is a disputed question of fact.  Doc. 60 at 9 (citing State v. Diaz, 908 P.2d 258 (N.M. Ct. App. 1995)).  Yet, Mr. Trujillo does *not* argue that rudeness, insolence, or anger is required for a violation of Albuquerque Code § 12-2-19, which, like N.M. Stat. § 30-22-1, prohibits interference with an officer in the discharge of her duties.  Albuquerque Code § 12-2-19(C) also expressly proscribes the failure to obey an order given by a police officer in the lawful discharge of her duties.  A violation of Albuquerque Code § 12-2-19 warrants a fine not exceeding $500 or imprisonment not exceeding 90 days, or both, so it is a petty misdemeanor.   Albuquerque, N.M., Code § 1-1-99; N.M. Stat. § 30-1-6(C).  Mr. Trujillo thus fails to argue that Officer Wright lacked probable cause to believe that he was acting in violation of the local law.  Cf. Starkey ex rel. A.B. v. Boulder Cnty. Soc. Servs., 569

F.3d 1244, 1252 (10th Cir. 2009) (failure to challenge alternate ground for a decision

generally precludes appeal).

In any event, the plain terms of N.M. Stat. § 30-22-1 do not require rude, insolent,

or angry behavior.  As a practical matter, such behavior often accompanies resistance or

obstruction of an officer, but a common sense reading of the statute suggests it is not

mandatory.  Another statutory provision, which deals with the battery of a peace officer,

explicitly states that the "intentional touching or application of force" to a peace officer

engaged in his duties is only unlawful when "done in a rude, insolent or angry manner."

N.M. Stat. § 30-22-24.  It is thus clear that, if the legislature had intended to require

rudeness, insolence, or anger in N.M. Stat. § 30-22-1, it could have done so.  Dicta in

distinguishable cases concerning double jeopardy and lesser included offenses does not

require a contrary understanding of clear statutory language.  Diaz, 908 P.2d at 261; State

v. Ford, 157 P.3d 77, 82–83 (N.M. Ct. App. 2007).

Regardless of Mr. Trujillo's knowledge and good intentions, a reasonable officer

could certainly conclude that Mr. Trujillo's words and conduct interfered with the

officer's efforts to secure and investigate an accident scene, in violation of state and local

law.  As such, Officer Wright had probable cause to arrest him.  See Atwater v. City of

Lago Vista, 532 U.S. 318, 323 (2001) (officer with probable cause may arrest for a minor,

criminal misdemeanor offense); Spencer v. Rau, 542 F. Supp. 2d 583, 591 (W.D. Tex.

2007) (granting qualified immunity under almost identical circumstances because,

-10-

"[a]lthough Plaintiff may have been well-intentioned . . . [i]t is undisputed that Plaintiff did not comply with the Officers' orders").


2.    Excessive Force

Mr. Trujillo next contends that Officer Wright violated his constitutional rights by using excessive force to arrest him when, in fact, no force was necessary.  Whether an officer used excessive force in the course of an arrest or other "seizure" of a person is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989).  The officer's conduct is viewed from the perspective of a reasonable officer on the scene, acknowledging that an officer "may be forced to make split-second judgments in certain difficult circumstances."  Marquez v. City of Albuquerque, 399 F.3d 1216, 1220 (10th Cir. 2005).  "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396.  Determination of whether the degree of force used was necessary and appropriate requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest."  Id.

Although Mr. Trujillo claims that he sustained an injury, Doc. 1 ¶ 16, the uncontroverted facts demonstrate that Officer Wright's use of force was neither excessive

nor objectively unreasonable.  Again, Officer Wright was engaged in the discharge of her
duties to secure the scene and ensure the safety of the accident victim.  Mr. Trujillo
disobeyed her order to step away.  As a result, Officer Wright attempted to handcuff him
by grabbing his arm.  Doc. 61-5 at 23–24.  When he continued to resist, she pulled his
index finger, resulting in Mr. Trujillo's alleged injury.  Id. at 24.  Under these
circumstances, a reasonable officer could certainly conclude that Mr. Trujillo was
interfering with the lawful discharge of her duties.  Thus, a reasonable officer could use
some force to control the situation by restraining or handcuffing Mr. Trujillo.  See Fisher
v. City of Las Cruces, 584 F.3d 888, 894 (10th Cir. 2009) ("[I]n nearly every situation
where an arrest is authorized, or police reasonably believe public safety requires physical
restraint, handcuffing is appropriate.").  Ultimately, the amount of force Officer Wright
used in her attempt to handcuff Mr. Trujillo was insufficient, also suggesting that it was
neither unreasonable nor excessive.  In any event, a police officer is deserving of
qualified immunity if the force utilized is within the bounds of appropriate police
responses.  See Saucier v. Katz, 533 U.S. 194, 208 (2001).

Mr. Trujillo also argues that Officer Wright "created the need to use force by
initiating the interaction with Plaintiff in such an aggressive manner and allowing little
time to pass before exerting force."  Doc. 60 at 11.  Indeed, whether an officer's own
conduct unreasonably created the need to use force is relevant to whether such force was
excessive.  Thomson v. Salt Lake Cnty., 584 F.3d 1304, 1320 (10th Cir. 2009); Medina v.
Cram, 252 F.3d 1124, 1132 (10th Cir. 2001).  Yet, the alleged injury occurred only after

Mr. Trujillo refused to comply with Officer Wright's order and he physically resisted her attempt to detain him.  To constitute excessive force, the conduct arguably creating the need for force must rise to the level of recklessness, rather than mere negligence. Thomson, 584 F.3d at 1320.  Mr. Trujillo has not shown that Officer Wright acted recklessly when she sought to effect compliance with her order.

Essentially, Mr. Trujillo contends that he should have been allowed to act as a good Samaritan and render aid to the accident victim, rather than step aside while Officer Wright assessed and took control of the situation.  However, Officer Wright was vested with the authority to secure the scene and ensure the safety of the victim, and Mr. Trujillo was required to obey her lawful command even if he disagreed with her approach to accident investigation and rendering aid.  Any other paradigm would be unworkable, no matter how well-intentioned the good Samaritan.

Because Mr. Trujillo has failed to show that Officer Wright violated any "clearly established statutory or constitutional rights of which a reasonable person would have known," in either the detention or force applied, qualified immunity is appropriate.

NOW, THEREFORE, IT IS ORDERED that the Defendant's Motion for Summary Judgment filed November 17, 2014 (Doc. 57) is granted and the March 9, 2015 trial of this matter is hereby vacated.

DATED this 20th day of January 2015, at Santa Fe, New Mexico.

*Paul Kelly Jr.*

United States Circuit Judge
Sitting by Designation

Counsel:
Nick Sitterly and Ray Twohig, Twohig Law Firm, Los Ranchos, New Mexico, for Plaintiff.


Kristin J. Dalton, Assistant City Attorney, City of Albuquerque, Albuquerque, New Mexico, for Defendant.